OPINION OF THE COURT
Jason L. Cook, J.
Defendant has been indicted for tampering with physical evidence, a class E felony (Penal Law § 215.40 [2]) under indictment No. 16-59. Defendant is indicted for count one, criminally negligent homicide (Penal Law § 125.10); count two, criminal injection of a narcotic drug (Penal Law § 220.46); count three, making a punishable false written statement (Penal Law § 210.45); and count five, criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) under indictment No. 17-03, following the court’s issuance of its memorandum decision and order dated April 21, 2017, which modified indictment No. 17-03. The indictments have been previously ordered consolidated for trial after motion of the People, with the consent of the defendant.
By notice of motion dated June 13, 2017, with supporting affirmation by attorney Barry, together with an affidavit of service confirming service by mail on that date to the District Attorney, defendant moved for an order dismissing counts two and five of indictment No. 17-03, and/or granting such other and further relief as the court deemed necessary and appropriate. Defendant asserted that Penal Law § 220.78 (1), referred to as the Good Samaritan Law, applied to him and therefore prohibited the People from seeking a conviction on these two counts. The court considered the defendant’s motion to be one under Criminal Procedure Law § 210.20 (1) (h), i.e., “There exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged.” Prior to the motion return date, the People submitted no written response in opposition to the defendant’s motion to dismiss.
*274 On the return date of the motion, June 28, 2017, in open court, the People submitted an answering affirmation to the court opposing any dismissal in furtherance of justice under Criminal Procedure Law § 210.40, commonly referred to as a Clayton motion, and argued against dismissal on those particular statutory grounds. However, defendant had not sought dismissal on those grounds and the court was not considering such a motion. Therefore, Criminal Procedure Law § 210.40 was not relevant to the analysis.
The motion was argued on June 28, 2017, at which time the court granted a hearing on the issue, and reserved decision on the motion to dismiss on the grounds sought. The court determined that at such hearing it would be the defendant’s burden of proof to show that he sought “health care” for the victim, and that he did so in “good faith” and that it was the People’s burden to prove that the sale of a controlled substance in question was for “consideration or other benefit or gain.” (Penal Law § 220.78 [1].)
During opening statements at the hearing, which commenced July 18, 2017, the People provided the court with a copy of the legislative history of Penal Law § 220.78, and asked the court to determine that the statute did not apply to the crimes of criminal injection of a narcotic drug (Penal Law § 220.46) and criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]). In response, the defendant orally opposed the People’s request for a statutory interpretation by the court, and instead asked the court to rely on the plain statutory language which references all “controlled substance [s] . . . under article two hundred twenty ... of this title.” (Penal Law § 220.78 [1].)
Since the statute has not yet been the subject of any reported cases regarding its interpretation that this court or counsel could find, this appears to be a case of first impression in New York State. Therefore, the court will address this preliminary issue of statutory interpretation as a question of law. (McKinney’s Cons Laws of NY, Book 1, Statutes § 77.) Upon review of the legislative materials submitted by the People regarding enactment of Penal Law § 220.78 in 2011, and upon a careful reading of the statute, the court concludes that the crimes of criminal injection of a narcotic drug (Penal Law § 220.46) and criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) are within the purview of Penal Law § 220.78.
*275 “[W]e are guided by well-settled principles of statutory construction. ‘ [C] ourts are obliged to interpret a statute to effectuate the intent of the Legislature’ (People v Williams, 19 NY3d 100, 103 [2012]). ‘As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof’ (People v Golo, 26 NY3d 358, 361 [2015], quoting Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]).
“We must ‘presum[e] that lawmakers have used words as they are commonly or ordinarily employed, unless there is something in the context or purpose of the [statute] which shows a contrary intention’ (People v Finley, 10 NY3d 647, 654 [2008] [internal quotation marks omitted]). Further, Penal Law provisions ‘must be construed according to the fair import of their terms to promote justice and effect the objects of the law’ (Penal Law § 5.00), and courts should ‘dispense with hypertechnical or strained interpretations’ of penal provisions (People v Versaggi, 83 NY2d 123, 131 [1994] [internal quotation marks omitted]).” (People v Aleynikov, 148 AD3d 77, 84 [1st Dept 2017], lv granted 29 NY3d 995 [2017]; see also Statutes § 76].)
Additionally, in interpreting amendments to the Drug Law Reform Act (DLRA), the Court of Appeals held:
“Finally, remedial statutes such as the DLRA should be interpreted broadly to accomplish their goals—in this case the reform of unduly harsh sentencing imposed under pre-2005 law (see McKinney’s Cons Laws of NY, Book 1, Statutes § 321 [‘Generally, remedial statutes are liberally construed to carry out the reforms intended and to promote justice’]).” (People v Brown, 25 NY3d 247, 251 [2015]; see also Statutes § 275 [which provides: “(g)enerally, statutes which are semi-criminal or remedial in nature are not strictly construed”].)
Here, Penal Law § 220.78 is clearly remedial in nature.
“The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction.” (Statutes § 94.)
*276 Additionally, as a matter of interpretation, the court must view the statute as a whole, by reading and construing all parts together. (Statutes § 97.) “All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof.” (Statutes § 98.) “So in the interpretation of a statute, the court must assume that the Legislature did not deliberately place in the statute a phrase intended to serve no purpose, but must read each word and give to it a distinct and consistent meaning.” (Statutes § 98, Comment.)
“The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.” (Penal Law § 5.00.)
Here, the court concludes that the intent of the legislature may be determined upon a reading of Penal Law § 220.78, as a whole, and there is no need to resort to review of the legislative record to determine the legislative intent insofar as the matters presently before the court. The four corners of the statute provide meaningful insight into the legislative intent.*
As an initial matter, Penal Law § 220.78 contains six subdivisions. Subdivision (1) is concerned with a person who helps another person “who is experiencing a drug or alcohol overdose or other life threatening medical emergency.” (Id.) Subdivision (1) is the relevant subdivision here. The People ask the court to interpret subdivision (1) as being applicable (in regard to crimes under Penal Law art 220) only to crimes of possession of controlled substances, or involving paraphernalia, where the prosecution thereof relies on evidence obtained by the authorities as a result of the defendant seeking health care for another person who is experiencing an overdose or other life threatening medical emergency. The People assert the defendant here has not been charged with either a drug possession or a drug paraphernalia crime, and, therefore, the People argue Penal Law § 220.78 does not apply to this case.
*277 The full subdivision (1) reads as follows:
“A person who, in good faith, seeks health care for someone who is experiencing a drug or alcohol overdose or other life threatening medical emergency shall not be charged or prosecuted for a controlled substance offense under article two hundred twenty or a marihuana offense under article two hundred twenty-one of this title, other than an offense involving sale for consideration or other benefit or gain, or charged or prosecuted for possession of alcohol by a person under age twenty-one years under section sixty-five-c of the alcoholic beverage control law, or for possession of drug paraphernalia under article thirty-nine of the general business law, with respect to any controlled substance, marihuana, alcohol or paraphernalia that was obtained as a result of such seeking or receiving of health care.” (Penal Law § 220.78 [1].)
Significantly, if the statute was intended only to apply to a possession or paraphernalia crime, then the phrase in subdivision (1) “other than an offense involving sale for consideration or other benefit or gain” would be irrelevant and clearly would not have been included in the statute. Such an interpretation would violate Statutes §§ 97 and 98.
Similarly, Penal Law § 220.78 (4), specifically providing an affirmative defense to criminal sale of controlled substances offenses in certain circumstances, would be superfluous if subdivision (1) was interpreted not to apply to article 220 drug sale crimes. Subdivision (4) specifically references sale crimes, rather than only possession crimes. Said subdivision reads as follows:
“It shall be an affirmative defense to a criminal sale controlled substance offense under this article or a criminal sale of marihuana offense under article two hundred twenty-one of this title, not covered by subdivision one or two of this section, with respect to any controlled substance or marihuana which was obtained as a result of such seeking or receiving of health care, that:
“(a) the defendant, in good faith, seeks health care for someone or for him or herself who is experiencing a drug or alcohol overdose or other life threatening medical emergency; and
*278 “(b) the defendant has no prior conviction for the commission or attempted commission of a class A-I, A-II or B felony under this article.” (Penal Law § 220.78 [4].)
An example of a criminal sale of a controlled substance offense not covered by subdivision (1) or (2) of Penal Law § 220.78 would be a criminal sale of a controlled substance in which the sale was one for benefit or gain, in other words, financial profit.
The court also notes that criminal injection of a narcotic drug (Penal Law § 220.46) charged in count two of the indictment has as an essential element knowing and unlawful possession of a narcotic drug, and thus, even under the narrow interpretation suggested by the People, this crime would come under Penal Law § 220.78 (1).
Therefore, in interpreting the statute, the court finds that the language includes the sale crimes, as they are also under article 220. On that basis, the court concludes that Penal Law § 220.78 (1) does apply to criminal injection of a narcotic drug (Penal Law § 220.46) and criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]).
The pretrial hearing in this matter was commenced July 18, 2017, then continued on July 31, 2017 and was completed on August 1, 2017, after arguments of counsel.
At the hearing, the defendant presented the testimony of his mother, Karen Taylor, and his brother, Richard Taylor, both of whom were present at the Taylor home when the alleged overdose occurred there on November 8, 2015. The only other evidence presented by the defendant was the recording of the 911 call placed by Karen Taylor to the Yates County Dispatch Center on the night of November 8, 2015.
The People presented the testimony of Sandra Smith, Yates County Sheriffs Department Chief Dispatcher, whose official duties include keeping records regarding 911 calls. She is also the aunt of Maranda Cleveland, the alleged victim and decedent. Additionally, the People presented the testimony of Makayla Pierce, Maranda’s best friend, and of Christina Cleveland, Maranda’s mother.
Upon review of all the evidence presented, the court makes the following findings of fact:
The defendant did seek health care for Maranda Cleveland, prior to her death, on November 8, 2015. The proof was uncontroverted that the defendant was in the upstairs bedroom with Maranda when he yelled for his mother Karen Taylor to *279 call 911. Karen Taylor was downstairs, in the kitchen, when she heard him yell to her. She grabbed the home phone and placed the call to 911. As she was dialing the phone, she went upstairs to find the defendant and Maranda in the only upstairs bedroom in the house. She observed Maranda on a bed, which was an air mattress on the floor, and the defendant kneeling on the floor next to her performing CPR. There was a door located at the foot of the stairs leading to the upstairs bedroom. It was not clearly established by the proof presented if the door was open or closed when she heard the defendant yelling to her.
When Karen Taylor arrived in the upstairs bedroom, she observed Maranda was clothed in shorts and a tank top. She stayed on the phone with the 911 operator during the entire call, during which time she observed the defendant and Ma-randa the whole time. She relayed instructions and questions from the 911 operator to the defendant, and relayed defendant’s answers to the questions back to the operator. She did not see her son Richard during any of the time from when she first heard the defendant yell to her to call 911 to the time the New York State Police arrived on scene. At no point during the call to 911 did the defendant leave the room. Before the 911 call ended, New York State Police arrived in the bedroom.
The defendant’s brother, Richard, also testified. He was separately charged, convicted and sentenced for the felony crime of tampering with physical evidence, after he took a box of needles and leftover drugs from the defendant and discarded the box in a vineyard on the night of November 8, 2015. Richard testified that he was outside smoking a cigarette that night when he heard the defendant yelling Maranda’s name three or four times. He walked into the house, to the door at the bottom of the stairs leading to the defendant’s bedroom. He saw no one around when he walked in. He testified that he recalls seeing his mother on the phone calling 911 when he was in the house, and that she was downstairs all the time he saw her during the 911 call. It was not clear from his testimony how long after he entered the house that he first saw his mother making the call. He testified that Charles came to the stairs during the 911 call and told him to get rid of a box, which the defendant then threw to him. The box contained needles and leftover drugs.
Overall, Richard’s testimony was inconsistent and his memory of what occurred was unclear. Thus, the court resolves any *280 conflicts between his testimony and that of Karen Taylor’s in favor of Karen Taylor’s version of events.
Sandra Smith testified about the 911 call records regarding Karen Taylor’s 911 call, which records were admitted into evidence. Her testimony and the 911 call records established that from the time the call was received at the Yates County Dispatch Center, three minutes and three seconds transpired before the New York State Police arrived at the Taylor house. Her uncontroverted testimony also established that her niece, Maranda, weighed approximately 195 pounds at the time of her death.
Makayla Pierce was Maranda’s best friend her whole life. She spoke to the defendant several times soon after Maranda’s death. During one of these conversations, Makayla testified that the defendant told Makayla that Maranda was naked when he first woke up that night and found her unresponsive and that he dressed her before the paramedics arrived, so they wouldn’t see her naked.
From the testimony of all the witnesses, and a review of the audio recording of the 911 call, the court finds that Maranda was clothed when Karen Taylor first saw her, seconds after she dialed the 911 call. Also, the credible evidence supports a finding that Maranda was naked when the defendant first noticed that she was in distress and having a medical emergency. Therefore, it follows logically that the defendant clothed her before he called out to his mother to call 911, as borne out by Karen Taylor’s testimony and a review of the audio recording of the 911 call. There was simply not enough time for the defendant to clothe Maranda from the time the 911 call was placed, to the time his mother observed the defendant and Ma-randa in the upstairs bedroom, and before the first responders arrived. The court further finds that the defendant threw his brother Richard the box of needles and leftover drugs and instructed him to get rid of it before he asked his mother to call 911. This is also borne out by Karen Taylor’s testimony and a review of the audio recording which includes Karen Taylor’s voice, the dispatcher’s voice, and the defendant’s voice in the background relaying information to his mother about Maranda’s medical condition.
The court makes the following conclusions of law based upon the facts found:
The defendant “sought health care” within the meaning of Penal Law § 220.78 (1). However, the defendant did not seek *281 such health care “in good faith,” which is a requirement of the statute to be entitled to its protection from being “charged or prosecuted.” (Penal Law § 220.78 [1].) The court reaches this conclusion based on its findings that the defendant did not immediately call for his mother, or anyone in the household, to call 911 when he first discovered Maranda unresponsive, but instead, dressed Maranda and had his brother Richard get rid of the box of needles and leftover drugs, before then calling for his mother to call 911.
Having made these findings of fact, and having reached these conclusions of law, it is hereby ordered that the defendant’s motion to dismiss counts two and five of the indictment on the grounds that Penal Law § 220.78 (1), referred to as the Good Samaritan Law, is a legal impediment under CPL 210.20 (1) (h) and therefore prohibits the People from seeking a conviction of counts two and five under Penal Law § 220.78 (1) is hereby denied; and it is further ordered that the court makes no determination as to whether the People met their required burden at the hearing of proving that the alleged sale between the defendant and decedent was “for consideration or other benefit or gain,” based on the argument advanced and testimony proffered by the People that the decedent provided transportation services to the defendant in exchange for drugs to share with the defendant, because the conclusions reached on the other issues are determinative of the motion; and it is further ordered that the court makes no finding or determination regarding the argument advanced by the People at the conclusion of the hearing that Penal Law § 220.78 is “unconstitutionally vague” and should be struck down as unconstitutional, because the conclusion reached on the other issues are determinative of the motion; and it is further ordered that the defendant may now raise the affirmative defense at trial pursuant to Penal Law § 220.78 (4), which trial shall commence on September 25, 2017; and it is further ordered that all applications presently before the court not otherwise specifically determined or addressed herein are denied.

 The People argue Laws of 2011 (ch 154, § 1), entitled “Legislative intent,” must control this court’s determination herein. The court notes that this provision was not codified as an amendment to the Penal Law, but is an enacting clause to the act, which act included amendments to the Criminal Procedure Law and Penal Law. Therefore, to the extent that the enacting clause contradicts provisions of the codified statute (Penal Law § 220.78), the court concludes that the provisions of the codified statute must prevail.