

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED109852 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Cause No. 20JE-CR03751-01 |
| | ) | |
| Paul E. Gill, | ) | Honorable Victor J. Melenbrink |
| | ) | |
| Respondent. | ) | Filed: March 22, 2022 |

### Introduction

The State charged Respondent Paul Gill with one count of possession of a controlled substance under § 579.015 after officers found methamphetamine in his work bag. Officers discovered the evidence after Gill called 911 to report the sudden death of his friend in an Arnold, Missouri hotel room. Gill sought dismissal of the charges under § 195.205, commonly referred to as the Good Samaritan Law. That statute provides immunity from arrest or prosecution for certain enumerated offenses to anyone who, in good faith, seeks medical assistance for a person experiencing a drug overdose or other medical emergency. The State's opposition to Gill's motion primarily argued that Gill did not seek medical assistance in good faith.

The circuit court granted Gill's motion to dismiss. In doing so, the circuit court committed two errors that require reversal. First, the circuit court's written ruling placed the burden of

persuasion for the non-application of § 195.205 on the State. But sections 579.015 and 579.180 direct that the defendant bears the burden to produce evidence of defenses found in Chapter 195. Second, the circuit court narrowed §195.205's good faith requirement to include only the caller's subjective intent at the time of the call for help. But good faith under § 195.205 requires an analysis of the circumstances surrounding the seeking of aid, including any delay in calling for medical assistance.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

## I.     Factual and Procedural Background

On February 23, 2021, the State charged Gill with possession of a controlled substance in violation of § 579.015. The probable cause statement supporting the information stated that, on May 5, 2020, officers from the Arnold Police Department responded to a hotel for a reported sudden death. Upon arrival, the officers found Gill and the body of a deceased 25-year-old man. The Arnold Police initially treated the death as suspicious until an autopsy determined that the victim had died from an overdose.

Gill told the responding officers that he and the victim had been sharing the room for a couple of days. Gill also told the officers that all of the victim's personal belongings were in Gill's car, which was parked in the hotel parking lot. Gill then showed the officers to his car, where one officer saw a pipe outside of the driver's side door that he recognized as being a type used to smoke methamphetamine. After obtaining Gill's written consent, the officers searched his car. In the course of the search, the officers found a bag containing several pills and a crystal rock, which the officers believed to be methamphetamine. When presented with the bag, Gill identified it as his

2

work bag and confirmed that the contents of the bag belonged to him. The Missouri Highway Patrol Crime Laboratory tested the crystal and confirmed it to be methamphetamine.

On June 16, 2021, Gill filed a motion to dismiss the charges, arguing that prosecution was barred by the Good Samaritan Law. Gill did not submit an affidavit in support of his motion or request an evidentiary hearing. Rather, Gill asserted that no evidentiary hearing was necessary because his motion relied on the State's version of the facts. Gill argued that the facts show he called for medical assistance in good faith and was immune from prosecution.

The circuit court held a hearing on the motion on June 24, 2021. The parties presented argument at the hearing, but presented no evidence. After the hearing, the circuit court directed the State to file a response to the motion to dismiss setting out the facts the State would present at an evidentiary hearing. The court also allowed Gill to file a reply.

The State filed its response in accordance with the court's order, arguing that Gill's call for help was not made in good faith. The State primarily argued that the evidence demonstrated that there was a significant delay between when Gill first discovered that the victim was in distress and when Gill finally called for medical assistance. The State argued that, during the delay, Gill attempted to hide evidence, cleaned the room, and cleaned the victim's body. In support, the State attached several excerpts from the police report made during the investigation into the victim's death. According to the State's response, on the day that the victim died, surveillance video in the hotel showed both Gill and the victim leaving and returning to the hotel room between 10:00 and 11:30am. This was the last time the victim was seen alive. The video then showed that, at 2:00pm, Gill and an unidentified man left the room and exited the hotel carrying bags. Gill returned later, alone and empty handed. Over the next several hours, Gill left and returned to the room several more times. Gill carried another bag out of the hotel room and returned without it. At 5:17 pm,

3

Gill carried yet another bag out of the room. A few minutes later, an unidentified woman entered the room using a key card.

Gill did not call 911 until 5:28 p.m. It is unclear from the record what Gill told the 911 operator, but the police report states that officers responded for a call of a non-responsive person, a person who was not breathing, and a suspicious death. When police arrived, they found the victim naked and lying flat on his back. Officers observed a brown liquid on a pillow and the floor that appeared to have come from the victim. Multiple officers noted that livor mortis was visible on the victim's right arm and back, which indicated to the officers that the victim had been dead for hours before Gill called for help. One officer noted that the lividity was inconsistent with the position of the victim, indicating that the body had been moved after lividity had set in.

Police also noted that it appeared that the hotel room had been cleaned, that the victim's body had been cleaned, and that Gill was aware that the victim was in distress long before calling for help. One officer noted that the hotel room appeared generally clean with wet towels located under the bathroom sink. He also found wet clothes belonging to the victim inside of a sink in the room. All of the luggage had also been removed from the room and placed in Gill's car, including a bag that contained the victim's cellphone and wallet. Underneath the front seat of Gill's car, officers found wet clothing belonging to the victim. This included a pair of the victim's underwear covered with a brown and red color that was consistent with the liquid that came from the victim's mouth and nose.

The police report showed that Gill attempted to conceal the victim's drug use from the police. Gill told multiple officers that the victim had not used drugs while they were together, at times stating that he did not believe the victim had used drugs for months or even years. Gill repeatedly told officers that Gill had only been drinking that day. Eventually, Gill admitted that he

4

and the victim had used methamphetamine in the hotel room, and he blamed his poor memory of events on the drug use.

The police report also contained inconsistent accounts from Gill regarding the events leading up to his 911 call and his relationship to the victim. Most problematically, Gill gave inconsistent accounts regarding when he knew that the victim was in distress and how long the victim had been dead. This included giving multiple versions of events during the course of one officer's interview. Gill told some officers that he did not realize that the victim was in distress until shortly before he called 911. He told other officers that he knew the victim was dead as soon as Gill woke up, and he had observed rigor mortis setting in on the body. In one account, Gill, who had training as a paramedic, said that he saw that the victim was breathing bloody bubbles from his mouth and nose, but he did not call 911 then because he believed the victim to be alive. In another account, Gill said that he may have wiped blood from the victim's mouth, and that he called 911 when the victim was still breathing bloody bubbles.

Gill also gave conflicting statements about what he and the victim had done that day. He also told officers that the victim had gone to sleep in a location that was different from where officers found him, but Gill denied moving the body. Gill did not tell officers that anyone else had been in the hotel room with him and the victim, though their presence was clearly shown on surveillance video. Gill initially told officers that he and the victim were merely co-workers, then later stated that they were in a relationship.

Following additional briefing from Gill, the circuit court dismissed the charge. In doing so, it ruled that the Good Samaritan Law's requirement of good faith was limited to the question of whether Gill "made his call for medical assistance with the honest purpose of obtaining aid for the subject, or whether there was some other ulterior motive." Under this limited definition of good

faith, the circuit court ruled that, even accepting all of the State's allegations as true, "the allegations of the State simply do not rise to the level of establishing that the Defendant was not acting 'in good faith' in specific reference to seeking aid."

The State appealed, arguing that the circuit court erred in both: 1) placing the burden of proof on the State, and 2) finding that Gill acted in good faith. The State appeals under § 547.200, which permits the State to appeal in all criminal cases "except in those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant." Because the circuit court's order of dismissal had the practical effect of terminating all possibility of future prosecution without making a factual determination of Gill's guilt or innocence, it constitutes a final judgment from which no double jeopardy could result. *State v. Smothers*, 297 S.W.3d 626, 630 (Mo. App. W.D. 2009); *State v. Coor*, 740 S.W.2d 350, 354-55 (Mo. App. S.D. 1987). We therefore have jurisdiction to hear this appeal.

## II.    Analysis

The Missouri General Assembly enacted § 195.205 in 2017 to encourage witnesses of drug overdoses to promptly seek potentially life-saving medical attention. Missouri is one of more than forty states to have passed such a law in an effort to combat the effects of the ongoing opioid epidemic. *See The Fatal Shortcomings of Our Good Samaritan Overdose Statutes and Proposed Model Statute*, 25 Cardozo J. of Equal Rts. & Soc. Just. 123, 126 (2018). To encourage people to help save the lives of those experiencing an overdose, section 195.205 provides those seeking medical assistance immunity from a list of minor drug offenses, including possession of a controlled substance. Section 195.205 states, in relevant part,

A person who, in good faith, seeks or obtains medical assistance for someone who

is experiencing a drug or alcohol overdose or other medical emergency or a person

6

experiencing a drug or alcohol overdose or other medical emergency who seeks

medical assistance for himself or herself or is the subject of a good faith request

shall not be arrested, charged, prosecuted, convicted, or have his or her property

subject to civil forfeiture or otherwise be penalized for the following if the evidence

for the arrest, charge, prosecution, conviction, seizure, or penalty was gained as a

result of seeking or obtaining medical assistance . . .

§ 195.205.2. The statute then lists possession of a controlled substance under § 579.015 as one of the offenses to which it applies.

Gill argues he did precisely what the statute requires. He called authorities to report a medical emergency, and the evidence against him was obtained only as a result of his decision to seek medical assistance. The State argues that this case is not so simple. In support, the State relies on evidence contained in the police reports showing that Gill was aware that the victim was facing a medical emergency well before he called for help. The State argues that, under the circumstances, the circuit court erred by: 1) placing the burden of proof under § 195.205 on the State, and 2) finding that Gill acted in good faith. Due to the relatively recent enactment of this law, both of these questions pose an issue of first impression.

### A.    Standard of Review

The State's points of error each involve questions of the interpretation of § 195.205. Statutory interpretation is a question of law that this Court reviews de novo. *State v. Smith*, 595 S.W.3d 143, 145 (Mo. banc 2020). In Point One, the question of who bears the burden of proof under § 195.205 is purely a question of statutory interpretation. In Point Two, the crux of the State's argument is that the "trial court's interpretation of the good-faith requirement in section 195.205 is unduly narrow" and focuses on the meaning of the term good faith as used in the statute.

7

App. Br. at 31. This is a question of interpretation of the statute that we review de novo. *Smith*, 595 S.W.3d at 145.

**B.    The circuit court erred in placing the burden of proof under § 195.205 on the State.**

Though § 195.205 does not, itself, state who bears the burden of proof regarding its application, that section is part of a statutory scheme involving both Chapters 195 and 579 of the Revised Statutes of Missouri that clearly places the burden of persuasion on the defendant seeking immunity. In many ways, Chapters 195 and 579 work in tandem. Chapter 195, titled Drug Regulations, contains many of Missouri's laws relating to controlled substances. Among many other things, Chapter 195 includes Missouri's schedule of controlled substances at § 195.017. Chapter 579, titled Controlled Substances Offenses, defines the criminal offenses and penalties related to the illegal possession, manufacture, and distribution of the controlled substances that are the subject of Chapter 195. In many instances, the criminal provisions of Chapter 579 specifically reference Chapter 195.

Section 579.015, which the State charged Gill with violating, directly provides the answer to whether Gill or the State bore the burden of proving the applicability of § 195.205. Subsection 1 of § 579.015 first sets out that "[a] person commits the offense of possession of a controlled substance if he or she knowingly possesses a controlled substance, except as authorized by this chapter or chapter 195." Then, subsection 5 of § 579.015 provides,

> In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this chapter or chapter 195, it shall not be necessary to include any exception, excuse, proviso, or exemption contained in this chapter or chapter 195, and *the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant*.

8

(emphasis added). Under § 579.015's plain language, Gill bore the burden of both raising and proving that he was entitled to the benefit of any applicable provision contained in Chapter 195, including § 195.205.

Section 579.180 similarly places the burden of proof of chapter 195 excuses and exemptions on the defendant. Section 579.180.1 provides:

> It is not necessary for the state to negate any exemption or exception in this chapter or chapter 195 in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this chapter or chapter 195. *The burden of producing evidence of any exemption or exception is upon the person claiming it*.

(emphasis added). These statutes make clear that the State had no obligation to plead or prove the inapplicability of § 195.205. Rather, sections 579.015.5 and 579.180.1 place the burden of persuasion squarely on Gill.

The circuit court's judgment, however, demonstrates that the Court weighed the evidence with the understanding that it was the State's obligation to negate the applicability of the statute. Specifically, the circuit court ruled that "the allegations of the State simply do not rise to the level of establishing that the Defendant was not acting 'in good faith' in specific reference to seeking aid." But the State was under no such obligation. Rather, it was incumbent upon Gill to prove he was entitled to immunity under § 195.205.

By applying the incorrect burden of proof, the circuit court's ultimate determination is cast into doubt. The court's finding that the State failed to carry its burden of proof is not necessarily the same as a finding that Gill successfully carried his. For this reason, when a circuit court applies the incorrect burden of proof, this Court has found it proper to reverse and remand so that the circuit court may reweigh the evidence utilizing the appropriate burden. *State v. Crum*, 617 S.W.3d 504, 509 (Mo. App. W.D. 2021).

9

The decision in *State v. Crum* from this Court's Western District provides an illustrative example. In *Crum*, a criminal defendant filed a motion to suppress evidence obtained during an allegedly illegal search conducted without consent. *Id.* at 506. The circuit court denied the motion to suppress and ruled that "the Defendant does not establish that the consent given . . . was involuntary." *Id.* This Court noted that this was not the correct standard for a motion to suppress, which places the burden on the State to prove the voluntariness of consent. *Id.* at 507. This Court remanded the matter to the circuit court to reconsider the evidence using the correct burden of proof. *Id.* at 509. In so doing, this Court, stated "because the trial court improperly placed the burden of proof on [the defendant], we cannot tell how the court would have weighed the evidence if properly placing the burden on the State." *Id.* at 508. The same is true here.

As in *Crum*, it is impossible for us to tell whether the circuit court would have come to the same conclusion under the correct burden of proof. As a result, we reverse the judgment and remand to the circuit court for further proceedings consistent with this opinion.

**C.     The circuit court erroneously limited § 195.205's good faith requirement.**

Next, we address the State's argument that the circuit court erred in interpreting § 195.205's good faith requirement. Although we remand this case for further proceedings under Point One, we address this argument because the issue is certain to arise on remand. *See State v. Hart*, 404 S.W.3d 232, 241 (Mo. banc 2013).

The circuit court was persuaded by Gill's arguments below that the statutory language requires the court to focus its inquiry into good faith solely on Gill's subjective intention at the time he picked up the phone to call 911. The circuit court ruled that the central question in a § 195.205 good faith analysis is "whether Defendant made his call for medical assistance with the honest purposes of obtaining aid for the subject, or whether there was some ulterior motive." It

10

also noted in a footnote that "by the plain language of the statute, the good faith requirement of § 195.205 only relates to the call for aid itself, not all aspects of the Defendant's conduct." Under this interpretation the circuit court ruled that, the State failed to demonstrate the call was not made in good faith because Gill could have simply left the scene rather than calling for help.

The circuit court's narrow interpretation of "good faith" is not supported by the language of the statute. Section 195.205 provides immunity to "[a] person who, in good faith, seeks or obtains medical assistance for someone who is experiencing a drug or alcohol overdose or other medical emergency[.]" The placement of the prepositional phrase "in good faith" within this sentence serves to modify both the words "seeks" and "obtains," such that a person must exercise good faith in seeking or obtaining help in order to be entitled to immunity under the statute. But nothing about the placement of the term "good faith" limits the action of seeking or obtaining medical assistance to the precise moment that a call for help is made or to the caller's subjective intention at the time of making the call. Rather, section 195.205 requires that an individual claiming immunity must exercise good faith generally in seeking or obtaining medical assistance.

This interpretation finds support in the "well-defined and generally understood meaning" of the phrase good faith. *State v. A.G.*, 670 S.W.2d 516, 517 (Mo. App. E.D. 1984) (quoting *People v. Nunn*, 296 P.2d 813, 818 (Cal. 1956)). Good faith is "ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." *Id.*; *see also State ex rel. Nixon v. Russell*, 45 S.W.3d 487, 497 (Mo. App. W.D. 2001) (citing Black's Law Dictionary (7th ed. 1999)). It also "generally imposes a duty on the obligor to use reasonable diligence—the diligence that an honest man of ordinary prudence is accustomed to exercise." *A.G.*, 670 S.W.2d at 517.

11

Under this definition, good faith in seeking medical assistance requires an honest and diligent effort on the part of the person seeking aid. Assessing the defendant's good faith necessarily requires consideration of the circumstances and the caller's conduct leading up to the call. This case provides a good example of why. The State sought to present evidence to the circuit court showing that Gill recognized that the victim was in distress but waited for hours before seeking medical assistance. During that time, the State argues Gill attempted to hide evidence, removed all luggage from the room, cleaned the room, and cleaned the victim's body. If all of these allegations are true, it is hard to see how Gill could be found to have sought medical assistance in good faith when Gill's actions may have actually prohibited the victim from receiving prompt care. This is true even if Gill genuinely intended to obtain help for the victim when he finally made the call for help.

Though no Missouri court has analyzed this issue, one New York trial court has analyzed a similar factual scenario and concluded that a person who delays in calling for medical assistance is not acting in good faith. In *People v. Taylor*, the defendant sought dismissal of his charges under New York's Good Samaritan Law, which is substantially similar to Missouri's. 60 N.Y.S.3d 779, 783 (N.Y. Sup. Ct. 2017). The evidence presented in support of the defendant's motion to dismiss showed that the defendant did not immediately seek medical assistance when he first discovered the overdose victim. Instead, the defendant dressed the victim and asked his brother to get rid of a box of needles and left-over drugs. *Id.* at 784-85. Only then did the defendant ask his mother to call 911. *Id.* The court ruled that even this slight delay in obtaining assistance showed that the defendant had not sought medical assistance in good faith. *Id.* at 785.

We find the logic in *Taylor* persuasive. The legislature passed § 195.205 with the purpose of saving the lives of overdose victims by encouraging people to seek medical assistance without

12

fear of criminal prosecution. That purpose is not served if medical assistance is unnecessarily delayed while evidence is hidden or the caller attends to other self-interested objectives. This Court's prior definitions of "good faith" and the *Taylor* case make clear that an individual does not act in good faith if they fail to faithfully and diligently attend to their duty or obligation. In the context of § 195.205, seeking medical assistance in good faith, necessarily means that it is done diligently and without unnecessary delay.

We hold that the circuit court erred in interpreting the good faith requirement of § 195.205 to only apply "to the call for aid itself, not all aspects of the Defendant's conduct." We reverse the judgment and remand for further proceedings consistent with this opinion.

The State argues that a remand is unnecessary because we can conclude that Gill did not act in good faith from the factual record before this Court. We disagree. The circuit court did not conduct an evidentiary hearing or otherwise make a factual record. Instead, the circuit court assumed all of the State's allegations as true. It is apparent from the circuit court's interpretation of § 195.205 that the court did not believe it necessary to closely examine the facts concerning Gill's conduct before his call. As a result, it held no evidentiary hearing and made no findings regarding the conflicting versions of events given by Gill. It is conceivable that, applying the correct burden of proof and after receiving evidence, the circuit court on remand would still find in Gill's favor. As a result, it is appropriate to remand for further proceedings.

Finally, we make an important note regarding the definition of "drug or alcohol overdose" contained in § 195.205.1. That broad definition includes the death of an overdose victim. The parties did not address this definition before the circuit court or in their briefing here. We raise this issue only to say that we make no determination on the impact of the definition in the context of this case because it was not raised or briefed by the parties herein.

13

### III.    Conclusion

For the foregoing reasons, we grant both of the State's points, reverse the judgment, and remand for further proceedings consistent with this opinion.

_____
John P. Torbitzky, J.

Kurt S. Odenwald, P.J., and
Kelly C. Broniec, J., concur.

14